David E. Kendall (Bar No. DK 8983)
Steven M. Farina *(admitted pro hac vice)*
Thomas H. L. Selby *(admitted pro hac vice)*
Jonathan Kravis *(admitted pro hac vice)*

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Counsel for Defendant RSM International, Limited*


IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
STAR ENERGY CORPORATION,

                               Plaintiff,

        - against -

RSM TOP-AUDIT, *et al.*,

                               Defendants.
----------------------------------------------------------------------X

No. 08 Civ. 00329

**ECF CASE**

**MEMORANDUM IN SUPPORT OF DEFENDANT
RSM INTERNATIONAL LIMITED'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.   The Second Amended Complaint Fails To State a Claim Against RSMi. ......................... 3

II.  This Court Lacks Personal Jurisdiction over RSMi............................................................ 9

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ............... 3

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) ....................... 4

*Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2284 (DLC), 2002 WL 826847
    (S.D.N.Y. May 2, 2002) ......................................................................................................... 4, 5

*Filler v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 230 F. Supp. 2d 152
    (D. Mass. 2002) ........................................................................................................................ 5

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997), *aff'd
    mem.*, 173 F.3d 844 (2d Cir. 1999) ............................................................................. 4, 6, 7-8

*In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003) ................... 4, 5, 6, 7, 8

*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................................................. 6

*In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509 (D.N.J. 2005) .......................... 5

*In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2003 WL 21488087 (S.D.N.Y.
    June 25, 2003) ...................................................................................................................... 4, 6

*Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1 (2d Cir. 1978) ............... 8

*Morgan Guar. Trust Co. of N.Y. v. Rep. of Palau*, 657 F. Supp. 1475 (S.D.N.Y. 1987) ............... 4

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers, LLP*, No. 03 Civ. 0613 GBD, 2004
    WL 112948 (S.D.N.Y. Jan. 22, 2004) ............................................................................ 3, 4, 5, 7, 8

*Reingold v. Deloitte Haskins & Sells*, 599 F. Supp. 1241 (S.D.N.Y. 1984) ............................. 4-5, 6

*Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, No. Civ.A. 00-5965
    (JCL), 2005 WL 1365772 (D.N.J. June 8, 2005) ..................................................................... 5

*Skidmore Energy, Inc. v. KPMG*, No. Civ.A. 3:03CV2138-B, 2004 WL 3019097 (N.D.
    Tex. Dec. 28, 2004) .................................................................................................................. 5

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F. Supp. 2d 388
    (S.D.N.Y. 2007) ........................................................................................................................ 9

## **FEDERAL RULES**

Fed. R. Civ. P. 12(b)(2) ..................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6)..................................................................................................3

## STATE CASES

*Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988)..................................................9, 10

## STATE STATUTES

CPLR 302(a)(3)(ii) (McKinney 2008).................................................................9, 10, 11

## INTRODUCTION

In its Second Amended Complaint, Plaintiff Star Energy Corporation seeks to hold Defendant RSM International Limited ("RSMi") liable for an alleged accounting fraud in which Plaintiff admits RSMi did not participate and of which Plaintiff admits RSMi had no knowledge until after the fact. Plaintiff's only basis for this broad assertion of vicarious liability is a theory of respondeat superior that has been squarely rejected by other district courts in this jurisdiction. For this reason, and because this Court lacks personal jurisdiction over RSMi, the sole claim against RSMi should be dismissed.[1]

## BACKGROUND

### A.   The Second Amended Complaint.

According to the allegations in the Second Amended Complaint, Plaintiff is "an oil and gas exploration company which seeks out investment and acquisition opportunities in areas of the world that are considered emerging markets." Second Am. Compl. ¶ 7. Plaintiff alleges that, in October 2006, it acquired the Volga-Neft Limited Company ("Volga-Neft") pursuant to a stock purchase agreement. *Id.* ¶ 23. According to Plaintiff, it made this purchase based on a fraudulent business plan and fraudulent certified financial statements. *Id.* ¶¶ 17-19, 21-23. Plaintiff alleges that these documents were prepared by RSM Top Audit ("Top Audit"), a Russian accounting firm. *Id.* Plaintiff further alleges that Top Audit is a member firm of a worldwide accounting network called RSM International Limited. *Id.* ¶ 9. According to Plaintiff, Top Audit and other individual members of the conspiracy against Plaintiff continued

---

[1]   In addition, because all the defendants in this case either have their principal place of business or reside in England or Russia, *see* Second Am. Compl. ¶¶ 8-12, dismissal on the basis of *forum non conveniens* may be proper. However, because the Russian defendants have not yet been properly served with the complaint, this issue is not yet ripe.

1

to provide Plaintiff with fraudulent financial statements, including an audit of Volga-Neft's statements through December 31, 2006. *Id.* ¶¶ 25-35.

Plaintiff alleges that, a few weeks after this audit was prepared, it received a letter from Elena Loss, Chairman of Top Audit (and a member of the alleged conspiracy) denying that Top Audit had ever performed an audit of Volga-Neft. *Id.* ¶ 35. Plaintiff alleges that it then contacted Jean Stephens, CEO of RSMi, about the Volga-Neft audit. *Id.* ¶ 41. After meeting with Ms. Stephens, Ms. Loss allegedly sent a letter to Plaintiff responding to Plaintiff's letter to Ms. Stephens. *Id.* ¶¶ 41-42.

### B.     RSMi.

Plaintiff alleges that RSMi is a company organized under the laws of the United Kingdom, with its principal place of business in London, England. Second Am. Compl. ¶ 9. Plaintiff further alleges that RSMi "is a worldwide network of professional services firms which purport to provide tax, accounting, consulting, and specialist advisory services to companies around the world under the 'RSM' brand," including Top Audit.[2] *Id.* Plaintiff does not allege that RSMi itself provided any professional services to Plaintiff at any time. Nor does Plaintiff allege that RSMi was in any way involved in the alleged fraudulent activity surrounding the Volga-Neft purchase. Finally, Plaintiff does not (and could not) allege that RSMi owns Top Audit in whole or in part, or that RSMi shares any officers, directors, or employees with Top Audit.

---

[2]  In fact, RSM International Limited is a company incorporated in England and Wales that provides administrative services to the member firms of RSM International Association, a Swiss association. For purposes of this motion to dismiss, however, the distinction between a "worldwide network" of accounting firms (which is what Plaintiff alleges RSMi to be) and a company that provides administrative services to the members of an association of accounting firms (which is what RSMi actually is) makes no difference. As discussed *infra*, even if RSMi were what Plaintiff alleges it to be, there still would not be a basis for finding a principal/agent relationship between RSMi and Top Audit.

2

**ARGUMENT**

**I.      The Second Amended Complaint Fails To State a Claim Against RSMi.**

In the Second Amended Complaint, Plaintiff asserts common law fraud and RICO claims against Top Audit and several individuals based on an alleged conspiracy to defraud Plaintiff in connection with purchase of a Russian energy company.  There is no allegation that RSMi participated in this conspiracy or even that RSMi knew about the alleged fraud until *after the fact,* when Plaintiff contacted RSMi to complain about the alleged activities of others.  The lone claim against RSMi is based on respondeat superior liability for the acts of Top Audit.  Second Am. Compl. ¶¶ 69-79.  This claim should be dismissed.  Under settled New York precedent, the allegations in the Second Amended Complaint, even if true, do not establish a principal/agent relationship between Top Audit and RSMi.  *See* Fed. R. Civ. P. 12(b)(6).

Where, as here, a plaintiff's claim against a defendant is based solely on a theory of vicarious liability, the plaintiff cannot survive a motion to dismiss with mere "bland assertion[s] of . . . agency."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 793 (2d Cir. 1999).  Instead, the plaintiff "must clearly and specifically articulate allegations of fact which can support the existence of" an agency relationship.  *Nuevo Mundo Holdings v. Pricewaterhouse Coopers, LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948, at *4 (S.D.N.Y. Jan. 22, 2004).

Under New York law,[3] three elements are required to establish agency: "First, there must be a manifestation by the principal that the agent shall act for him. Second, the agent must accept the undertaking. Lastly, there must be an understanding between the parties that the principal is to be in control of the undertaking." *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991). The essential feature of agency is control: "There is no agency relationship where the alleged principal has no right of control over the alleged agent." *Morgan Guar. Trust Co. of N.Y. v. Rep. of Palau*, 657 F. Supp. 1475, 1481 n.2 (S.D.N.Y. 1987).

District courts within this jurisdiction and elsewhere have routinely held that this essential feature of agency is absent from a relationship like the one between an accounting firm and an international association or network to which the firm belongs. *See Nuevo Mundo*, 2004 WL 112948, at *8 (granting motion to dismiss because plaintiffs had not alleged facts sufficient to demonstrate principal-agent relationship); *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2003 WL 21488087, at *10 (S.D.N.Y. June 25, 2003) (same); *see also In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003) (same); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997), *aff'd mem.*, 173 F.3d 844 (2d Cir. 1999) (unpublished table decision) (same); *Reingold v. Deloitte Haskins & Sells*, 599 F. Supp. 1241

---

[3]    Other district courts within this jurisdiction have applied New York agency law and the federal common law of agency to determine whether an umbrella accounting organization has a principal/agent relationship with one of its member firms located in a foreign country. *See, e.g.*, *Nuevo Mundo Holdings v. Pricewaterhouse Coopers, LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004); *Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2284 (DLC), 2002 WL 826847 (S.D.N.Y. May 2, 2002). Those cases have recognized that "there does not appear

4

(S.D.N.Y. 1984) (same). District court decisions from other jurisdictions are in accord. *See In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 570-72 (D.N.J. 2005); *Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, No. Civ.A. 00-5965 (JCL), 2005 WL 1365772 (D.N.J. June 8, 2005); *Skidmore Energy, Inc. v. KPMG*, No. Civ.A. 3:03CV2138-B, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) (citing *Asia Pulp*, 293 F. Supp. 2d 391); *Filler v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 230 F. Supp. 2d 152 (D. Mass. 2002) (same)

The basis for these decisions is the straightforward proposition that "[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name." *Nuevo Mundo*, 2004 WL 112948, at *3. Thus, for example, in *Nuevo Mundo*, Judge Daniels granted the motions to dismiss of defendants Pricewaterhouse Coopers ("PWC") and Arthur Andersen ("Andersen") on the ground that those firms could not be held liable for the conduct of Peruvian accounting firms with which they were affiliated through an accounting network. In so holding, the court rejected the plaintiffs' argument that "overall training and supervision of" affiliates by PWC and Andersen established a principal-agent relationship between those firms and their Peruvian affiliates. *Id.* at *3-6 (quotations omitted). The court also refused to find agency based on representations by the affiliates to third parties regarding their relationships with PWC and Andersen, reasoning that "the authority of an agent can only be established by tracing it to its source in some word or act of the alleged principal," and therefore the fact that the affiliates had "represented themselves as part of defendants" was "insufficient to withstand defendants' motion to dismiss." *Id.* at *6.

---

to be any substantive difference between" these two bodies of agency law, and therefore it is proper for a court deciding such a case to rely on both. *Cromer*, 2002 WL 826847, at *4 n.5.

5

Other cases from this jurisdiction similarly hold that an "umbrella" accounting organization cannot be held vicariously liable for the acts of its "member firms worldwide" based solely on the affiliate relationship. *Worldcom,* 2003 WL 21488087, at *10 (quotations omitted) (granting motion to dismiss for absence of principal-agent relationship); *Asia Pulp*, 293 F. Supp. 2d at 396 (same); *Howard*, 977 F. Supp. at 661-62 (same); *Reingold*, 599 F. Supp. at 1252-53 (same). These cases also specifically recognize that marketing statements by an umbrella organization advertising its "global" or "worldwide" membership similarly do not establish a principal-agent relationship. *Reingold*, 599 F. Supp. at 1253-54 & n.10; *Howard*, 977 F. Supp. at 661-62.[4]

These cases require dismissal of Plaintiff's vicarious liability claim against RSMi. Plaintiff grounds that claim on the following allegations of conduct by RSMi: (1) RSMi "permits" Top Audit "to use the 'RSM' name as a member firm and allows it to perform audits and other services utilizing its reputation," Second Am. Compl. ¶ 73, and RSMi "purports to control the standards by which" Top Audit "performs these services," *id.*; *see also id.* ¶¶ 37-39, 71; and (2) RSMi "advertises itself as one combined organization," *id.* ¶ 39, and "invites companies to contact its member firms through" its website and "provides contact information for RSM Top-Audit on its website," *id.* ¶ 40. In addition, Plaintiff contends that its agency claim

---

[4] By contrast, district courts in this jurisdiction have found a principal/agent relationship between an international accounting organization and its member firms only when the organization has directly intervened in the day-to-day operations of the member firms to an extent that would suggest affirmative control. Thus, in *In re Parmalat Securities Litigation*, the court concluded that the plaintiffs had adequately pleaded an agency relationship between two accounting networks and their affiliate firms based on allegations that the networks made staffing decisions for the member firms in connection with the audit at issue. *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 294 (S.D.N.Y. 2005).

6

is supported by its allegations that Top Audit used RSMi's name in several communications with Plaintiff. *Id.* ¶¶ 19, 21, 22.

These allegations are nearly identical to the grounds repeatedly rejected by the district courts in this jurisdiction as a basis for an agency relationship between an accounting network and a member firm. As those cases explain, Plaintiff's allegations are not sufficient to establish a principal-agent relationship between RSMi and Top Audit.

1. The fact that a global accounting network "set[s] 'professional standards and principles' under which the individual offices" within the network "operated" does not show that those individual offices acted as the network's agent when conducting a particular audit. *Asia Pulp*, 293 F. Supp. 2d at 396. Rather, the individual offices are agents of the network only if the network is "able to control or in any way influence *the particular audits conducted or opinions offered by its individual member firms.*" *Id.* (emphasis added). There is no allegation here (as in *Parmalat*) that RSMi controlled, influenced, or even knew about the alleged fraudulent conduct of Top Audit in connection with the Volga-Neft purchase. Plaintiff's attempt to plead around this shortcoming by alleging that RSMi has established and monitored general compliance standards for its member firms, Second Am. Compl. ¶¶ 37-39, has previously been rejected by district courts within this jurisdiction, *see, e.g.*, *Asia Pulp*, 293 F. Supp. 2d at 396; *Nuevo Mundo*, 2004 WL 112948, at *3.

2. Similarly, Plaintiff's allegations regarding RSMi's advertising and the contact information that RSMi provides on its website do not establish that RSMi controls Top Audit's auditing activity. The fact that an accounting network "markets" itself as a "global," "one-firm" entity on its "web site" is not enough to establish that the network is the principal of its members. *Asia Pulp*, 293 F. Supp. 2d at 393-94, 396 (quotations omitted); *see also Howard*, 977 F. Supp.

7

at 662 ("[P]ublic relations materials suggest[ing] that" the network "is a global firm or an international network of member firms" does not justify attributing the member firms' conduct to the network.). As these cases recognize, advertising statements by an accounting network to the effect that the network is a single "combined organization" do not show that the network *controls* the auditing work of its members, and therefore those statements do not establish an agency relationship between the network and the member firms.

      3. Finally, Plaintiff's allegations that Top Audit made representations suggesting that it was RSMi's agent would not show that RSMi acted in a manner consistent with the existence of a principal-agent relationship. An entity "cannot confer authority upon [itself] or make [itself] an agent merely by saying that [it] is one." *Nuevo Mundo*, 2004 WL 112948, at *6 (citing *Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1, 10 (2d Cir. 1978)). Therefore, allegations that a member firm "represented [itself] as part of" an accounting network are "insufficient to withstand [a] motion to dismiss." *Id.*

      Plaintiff's additional allegation that Ms. Stephens "[e]xercis[ed]" RSMi's "control" over Top Audit after Plaintiff wrote to Ms. Stephens regarding the Volga-Neft audit, Second Am. Compl. ¶ 41, is insufficient to establish an agency relationship with respect to the Volga-Neft audit itself. In particular, Plaintiff alleges that Ms. Stephens "instructed Loss to" hire attorneys for Top Audit and "to draft a responsive letter and provide it to her at RSM International for review." *Id.* Ms. Stephens is alleged to have taken all these actions *after* Plaintiff wrote to Ms. Stephens complaining of Top Audit's behavior. *Id.* Even if these allegations were true, they still would not establish that RSMi controlled Top Audit (and therefore that Top Audit acted as RSMi's agent) for purposes of the Volga-Neft audit. These allegations establish at most that RSMi had the authority to call meetings with Top Audit personnel and to review Top Audit's

8

responses to inquiries directed *to RSMi* after the fact. They do not establish that RSMi exercised control over Top Audit's auditing work.[5]

## II.     This Court Lacks Personal Jurisdiction over RSMi.

The claim against RSMi should also be dismissed for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "Determining whether the district court has jurisdiction over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process." *Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F. Supp. 2d 388, 396 (S.D.N.Y. 2007) (citation omitted).

The only provision of New York's long-arm statute that even arguably applies here is CPLR 302(a)(3)(ii) (McKinney 2008). That section states that a defendant is subject to jurisdiction if it: (1) "commits a tortious act without the state causing injury to person or property within the state" either "in person or through an agent;" (2) "expects or should reasonably expect *the act* to have consequences in the state," and (3) "derives substantial revenue from interstate or international commerce." CPLR 302(a)(3)(ii) (emphasis added). Under that section, personal jurisdiction over a principal is proper based on the knowledge of an agent only when the agent is engaged in "purposeful activities in this State in relation to" the transaction at issue "for the benefit of and with the knowledge and consent of the" alleged principal and the alleged principal "exercised some control over" the alleged agent "in the matter." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988).

---

[5]  For example, the American Bar Association accredits law schools, requires its members to meet certain standards, and subjects its members to periodic reviews to ensure that they meet those standards. And if an individual wrote to the Association to complain about the conduct of a member law school, the Association might call a meeting with a representative of the school and direct the school to respond to the complaint. But this does not put the American Bar Association and its member law schools in a principal/agent relationship.

9

Plaintiff's allegations do not meet that standard. Plaintiff's contention that RSMi "expected or should reasonably have expected" Top Audit's allegedly tortious acts "to have consequences in" New York, Second Am. Compl. ¶ 9, is not based on RSMi's actual knowledge of Top Audit's allegedly tortious activity at the time it occurred. Indeed, Plaintiff does not even allege that RSMi was aware of Top Audit's alleged actions until after they occurred, when Plaintiff contacted Ms. Stephens to complain.

Instead, Plaintiff alleges that RSMi "knew or should have known that RSM Top-Audit would perform services that affected persons in . . . New York" generally. *Id.* ¶ 40. That is so, says Plaintiff, because Top Audit "states on its website that it is authorized to audit public companies listed on the" New York Stock Exchange, and because RSMi "made a discernable effort to directly or indirectly serve the New York financial market." *Id.*

As *Kreutter* explains, however, those allegations of RSMi's general knowledge of Top Audit's New York business are insufficient to establish personal jurisdiction over RSMi for claims arising out of the Volga-Neft purchase under section 302(a)(3)(ii). Under that section, personal jurisdiction over a principal is proper based on the knowledge of an agent only when the agent is engaged in "purposeful activities in this State in relation to" the transaction at issue "for the benefit of and with the knowledge and consent of the" alleged principal and the alleged principal "exercised some control over" the alleged agent "in the matter." *Kreutter*, 522 N.E.2d at 44. Here, Plaintiff has alleged neither that Top Audit engaged in the alleged fraudulent activity surrounding the Volga-Neft purchase "with the knowledge and consent of" RSMi, nor that RSMi "exercised some control over" Top Audit "in the matter," i.e., in the Volga-Neft purchase. Accordingly, Plaintiff's allegation that RSMi should have expected Top Audit's actions generally to have consequences in New York because Top Audit transacts business in

New York does not suffice to establish personal jurisdiction over RSMi with respect to alleged fraud arising out of the Volga-Neft purchase under section 302(a)(3)(ii).

## CONCLUSION

For the foregoing reasons, RSMi's motion to dismiss should be granted.

> Respectfully submitted,
>
> /s/ Steven M. Farina
> David E. Kendall (Bar No. DK 8983)
> Steven M. Farina *(admitted pro hac vice)*
> Thomas H. L. Selby *(admitted pro hac vice)*
> Jonathan Kravis *(admitted pro hac vice)*
>
> WILLIAMS & CONNOLLY, LLP
> 725 Twelfth Street, N.W.
> Washington, DC 20005
> (202) 434-5000
>
> *Counsel for Defendant RSM International Limited*

## **CERTIFICATE OF SERVICE**

      I, Jonathan Kravis, hereby certify that on this 30th day of April, 2008, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's electronic filing system upon:

>Martin P. Russo
>Alison B. Cohen
>Nixon Peabody LLP
>437 Madison Avenue
>New York, NY 10022
>*Counsel for Plaintiff*

      /s/ Jonathan Kravis_____
      Jonathan Kravis