David E. Kendall (Bar No. DK 8983)
Steven M. Farina *(admitted pro hac vice)*
Thomas H. L. Selby *(admitted pro hac vice)*
Jonathan Kravis *(admitted pro hac vice)*

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Counsel for Defendant RSM International, Limited*


IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
STAR ENERGY CORPORATION,

                         Plaintiff,

       - against -

RSM TOP-AUDIT, *et al.*,

                         Defendants.
----------------------------------------------------------------------X

No. 08 Civ. 00329

**ECF CASE**

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
RSM INTERNATIONAL LIMITED'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.   The Second Amended Complaint Fails To State a Claim Against RSMi. ......................... 2
II.  This Court Lacks Personal Jurisdiction over RSMi............................................................ 8

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) ...................6, 7

*Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*, 336 F.3d 94
    (2d Cir. 2003)............................................................................................................... 9-10

*Cicalo v. Harrah's Operating Co.*, No. 06 Civ. 221 (PKL), 2008 WL 1847665 (S.D.N.Y.
    Apr. 24, 2008)......................................................................................................................10

*Cromer Financial Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) .......................................4

*Cromer Financial Ltd. v. Berger*, Nos. 00 Civ. 2284(DLC), 2498(DLC), 2002 WL
    826847 (S.D.N.Y. May 2, 2002)......................................................................................4, 7

*Filler v. Lernout (In re Lernout & Hauspie Securities Litigation)*, 230 F. Supp. 2d 152
    (D. Mass. 2002).................................................................................................................3, 8

*Hollins v. United States Tennis Ass'n*, 469 F. Supp. 2d 67 (E.D.N.Y. 2006)................................10

*In re Asia Pulp & Paper Securities Litigation*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003)............1, 3, 4

*In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...............................5, 6

*Monarch Insurance Co. of Ohio v. Insurance Corp. of Ireland Ltd.*, 835 F.2d 32 (2d Cir.
    1987) ....................................................................................................................................10

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 GBD, 2004
    WL 112948 (S.D.N.Y. Jan. 22, 2004) ........................................................................3, 6, 7

*Prisco v. State of New York*, No. 91 Civ. 3990 (RLC), 1996 WL 596546 (S.D.N.Y. 1996).........10

*Reiss v. Societe Centrale du Groupe des Assurances Nationales*, 235 F.3d 738 (2d Cir.
    2000) ....................................................................................................................................10

*Texas International Magnetics, Inc. v. Aurig-Aurex, Inc. (In re Magnetic Audiotape
    Antitrust Litigation)*, 334 F.3d 204 (2d Cir. 2003) ................................................................10

**INTRODUCTION**

Plaintiff Star Energy Corp.'s opposition does not address the fundamental legal problem with Plaintiff's claim against Defendant RSM International Limited ("RSMi")—there is no suggestion that RSMi was in any way involved in the alleged accounting fraud, or even had any knowledge of the alleged fraud until after it is purported to have occurred. Instead, Plaintiff argues that RSMi should be held vicariously liable for the conduct of RSM Top Audit because RSMi allowed Top Audit to use RSMi's brand name, set accounting standards for Top Audit's accounting work, and participated in Top Audit's response to Plaintiff's communications *to RSMi after the alleged fraud had already occurred*. The nearly 14 pages of facts and 16 separate exhibits with which Plaintiff fortifies its filing are thus makeweight: they offer no substance to overcome the agency test that Plaintiff's Complaint fails.[1] As the cases discussed in RSMi's opening memorandum, as well as the cases cited in Plaintiff's opposition, make clear, Plaintiff's allegations are insufficient to establish a principal-agent relationship between a network of accounting firms and one of the network's members. The individual member firms are agents of the network only if the network is "able to control or in any way influence *the particular audits conducted or opinions offered by its individual member firms*." *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003) (emphasis added). Nothing in Plaintiff's opposition counsels in favor of departing from that well-settled proposition in this case.

---

[1] In two footnotes, Plaintiff asserts that RSMi has "admitted that RSM Top-Audit was engaged to present" an allegedly fraudulent Business Plan to Plaintiff, that RSMi does not "dispute[]" the "authenticity" of the Business Plan, and that RSMi "has not disputed or disavowed Salnikov's authority to prepare the" Business Plan "on behalf of RSM Top-Audit using the RSMi name." Pl.'s Mem. in Opp'n to Mot. to Dismiss 7 n.9 & 18 n.22 (May 28, 2008). That assertion fundamentally misunderstands the current stage of the proceedings. On a motion to dismiss, RSMi is required to accept as true all of Plaintiff's allegations, including its allegations regarding the Business Plan. Accepting allegations as true for purposes of a motion dismiss, of course, is not the same thing as "admitting" or "not disputing" the factual accuracy of those allegations.

Moreover, because Plaintiff does not allege that RSMi had any knowledge or control over the activity of Top Audit giving rise to the alleged fraud, Plaintiff's allegations are insufficient to support personal jurisdiction over RSMi. Plaintiff's newly-minted theory of personal jurisdiction by ratification does not cure this fatal flaw, as Plaintiff's allegations, even if true, do not show that RSMi ratified any allegedly fraudulent conduct.

## I. The Second Amended Complaint Fails To State a Claim Against RSMi.

Plaintiff concedes that its claim against RSMi is not based on any action that RSMi is alleged to have taken with respect to the audit at issue. Instead, Plaintiff contends that RSMi can be held vicariously liable for the conduct of RSM Top Audit based on a principal-agent relationship between the two firms because:

> [1] RSMi controlled RSM Top-Audit's eligibility for membership and ability to use the RSM brand name, [2] RSMi dictated and enforced auditing standards that governed the performance of RSM Top-Audit's audit work, . . . and [3] RSMi directed and approved the response of RSM Top-Audit to Star Energy's counsel after RSM Top-Audit's fraudulent conduct came to light.

Pl.'s Mem. in Opp'n to Mot. to Dismiss 15-16 (May 28, 2008) ("Opp'n"). Moreover, Plaintiff says that *Top Audit's* representations regarding its relationship with RSMi constitute evidence of a principal-agent relationship. *Id.* at 18. These allegations miss the mark entirely. As Plaintiff admits, the *sine qua non* of a principal-agent relationship is the principal's authority to control the agent with respect to the conduct at issue. *Id.* at 15. Under well-settled precedent, Plaintiff's allegations, even if true, do not demonstrate that RSMi *controlled* Top Audit's conduct in performing the allegedly fraudulent audit at issue in this case. Plaintiff's attempt to distinguish these cases is unavailing, and the cases Plaintiff cites do not support its position.

*First*, allegations that a network and a member firm share a name and that the network has conditions for membership have been rejected as a basis for finding an agency relationship

between firm and network. On the contrary, "courts have declined to treat different firms as a single entity, holding them liable for one another's acts, simply because they shared an associational name" and adhered to membership requirements. *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) (allegations that member firms "use the Andersen and Price Waterhouse Coopers name" and that the network "requires" member firms "to follow certain kinds of standards and procedures in order to be able to use the brand name" insufficient to establish agency relationship (quotation marks omitted)); *see also Asia Pulp*, 293 F. Supp. 2d at 393 & n.3 (allegation that "Andersen Singapore" was part of "worldwide structure" using the same brand name and adhering to "professional standards and principles" insufficient to establish agency relationship); *Filler v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (declining to find principal-agent relationship on the ground that the member firm and the network "shared an associational name").

*Second*, district courts within this jurisdiction and elsewhere have squarely rejected the argument that the existence of professional standards promulgated by an accounting network establishes a principal-agent relationship between the network and the member firm. *See* Def.'s Mem. in Supp. Mot. to Dismiss 7-8 (Apr. 30, 2008). Plaintiff's effort to distinguish these cases on the ground that they do not allege "specific facts evidencing actual control over the individual member firm[s]," Opp'n 21, simply misreads the cases. Thus, for example, in *Nuevo Mundo*, the plaintiffs argued that the accounting network engaged in "overall training and supervision of all affiliates" and conducted "peer review meetings held to assure compliance with the accepted professional standards and ethical requirements of what each affiliate is doing." 2004 WL 112948, at *3 (quotation marks omitted). Similarly, in *Asia Pulp*, the plaintiffs alleged that the

network "set 'professional standards and principles' under which" its member firms "operated." 293 F. Supp. 2d at 396. These allegations are virtually identical to Plaintiff's allegation in this case that RSMi "dictated and enforced auditing standards that governed the performance of RSM Top-Audit's work." Opp'n 15. Such allegations are insufficient to establish a principal-agent relationship between an accounting network and a member firm because they do not show that the network "was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms." *Asia Pulp*, 293 F. Supp. 2d at 396.

The *Cromer* case on which Plaintiff places so much reliance only highlights the deficiencies in Plaintiff's allegations. In *Cromer Financial Ltd. v. Berger*, the court concluded that a principal-agent relationship existed between Deloitte Touche Tohmatsu, an international professional services firm, and William Jack, the partner in Deloitte's Bermuda affiliate in charge of the audits at issue in the litigation. Nos. 00 Civ. 2284(DLC), 2498(DLC), 2002 WL 826847, at *2 (S.D.N.Y. May 2, 2002). That conclusion was based on allegations that Deloitte had identified Mr. Jack as a "global practice leader," a member of Deloitte's "Global Financial Services Industries (GFSI) team," and a "part of Deloitte's global investment management and hedge fund practice," *id.*, and therefore Mr. Jack could be considered an agent of Deloitte. Notably, *Cromer* did *not*, as Plaintiff states, find a principal-agent relationship between Deloitte and *the member firm itself*. *See* Opp'n 16. Indeed, the *Cromer* opinion cited by Plaintiff was based on an amended pleading filed by the plaintiffs in that case after the court dismissed the original claims against Deloitte on the ground that the member firm's alleged conduct could not be attributed to Deloitte because Deloitte had no actual knowledge of the alleged fraud. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 493-94 (S.D.N.Y. 2001).

*Cromer* is thus no help to Plaintiff. In this case, unlike *Cromer*, there is no William Jack—Plaintiff does not allege that any Top Audit employee engaged in the alleged fraudulent conduct held a position within RSMi such that the employee could be considered RSMi's agent. And Plaintiff's assertion that *Cromer* supports the finding of a principal-agent relationship between an international accounting network and a member firm based on allegations that the network promulgated accounting standards and allowed the member firm to use the network's brand name, Opp'n 17, simply misreads that case—*Cromer* found a principal-agent relationship between the network and a particular employee, not between the network and the member firm.

*Third*, Plaintiff's reliance on allegations regarding RSMi's conduct in responding to complaints that Plaintiff sent RSMi after the alleged fraud occurred is misplaced. Those allegations, even if true, establish *at most* that RSMi participated in Top Audit's responses to urgent inquiries directed *to RSMi* after the fact. They do not establish that RSMi controlled Top Audit's auditing activities.

Once again, the case cited by Plaintiff, *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005), does not support a contrary conclusion. In *Parmalat*, the court decided that two "international accounting enterprises," *id.* at 287, Deloitte and Grant Thornton, could be held liable for audits conducted by several of their member firms and supervised by the enterprises themselves. The *Parmalat* court explained that cases such as *Nuevo Mundo* did not apply because the plaintiffs had "alleged that [the member firm auditor] sought direction and help from" Deloitte on the audit, and that Deloitte "took actions in directing—or directing the removal of—auditors on the . . . audit" while the audit was in progress. *Id.* at 294-95. The court relied on similar allegations in denying Grant Thornton's motion to dismiss, concluding that

5

Grant Thornton's "ability to discipline *individual partners* of" a member firm "suggests that it had the power to" control the member firm's auditing activities. *Id.* at 300-01 (emphasis added).

By contrast, RSMi was not involved in the audit at issue in this case at the time it occurred, nor does Plaintiff allege any supervisory actions with respect to Top Audit's auditing activities. There is no allegation, for example, that Top Audit sought help from RSMi with the Volga Neft audit. Nor is there any allegation that RSMi, like the defendant firms in *Parmalat*, exercised control over Top Audit's auditing activities through personnel decisions—by "directing—or directing the removal of—auditors on" the audit, or by disciplining Top Audit *employees* for their auditing work. *Id.* at 294-95. And unlike the allegations in *Parmalat*, Plaintiff's allegations against RSMi concern RSMi's response to a *post hoc* inquiry directed *to RSMi* itself—taking as true Plaintiff's allegation, all that is alleged is that RSMi participated in Top Audit's responses to complaints directed to RSMi. This does not even remotely suggest that RSMi had the additional authority to control Top Audit's auditing activities.

Finally, Plaintiff's reliance on documents bearing RSMi's name that were drafted by Top Audit and given to Plaintiff simply ignores fundamental principles of agency law. As Plaintiff admits, a necessary element of agency is "a manifestation *by the principal* that the agent shall act for him." Opp'n 15 (emphasis added) (*quoting Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991)). As the very case cited by Plaintiff explains, this means that an agency relationship "exists only where the agent may reasonably infer from the words or conduct *of the principal* that the principal has consented to the agent's performance of a particular act." *Parmalat*, 375 F. Supp. 2d at 290 (emphasis added) (quotation marks omitted). For this reason, allegations regarding a member firm's representations are "insufficient to withstand [a] motion to dismiss." *Nuevo Mundo*, 2004 WL 112948, at *6.

*Cromer* did not suggest the contrary. In *Cromer*, the court relied on statements *by the alleged principal*, Deloitte, to conclude that Mr. Jack's relationship with Deloitte supported a finding of agency, even absent allegations that Deloitte had much those statements to Mr. Jack himself: "The allegations in the amended pleading . . . are sufficient to infer that *the words of and conduct by Deloitte vis a vis* Jack were effective in conveying to Jack his actual authority to act as Deloitte's agent." *Cromer*, 2002 WL 826847, at *5 (emphasis added), *quoted at* Opp'n 17. The *Cromer* court reasoned that if Deloitte had made these representations to third parties, then it could reasonably be inferred that Deloitte had made similar representations to Mr. Jack himself. By contrast, Plaintiff cites statements made to it, not by the alleged principal, but by the alleged agent, Top Audit, regarding the RSMi/Top Audit relationship. Opp'n 18. As *Nuevo Mundo* explains, *see* 2004 WL 112948, at *4, those statements do not invite a similar inference—allegations regarding an *agent's* representations do not show "a manifestation *by the principal* that the agent shall act for him." Opp'n 15 (emphasis added) (quoting *Basic Books*, 758 F. Supp. at 1546). *Cromer* thus does not support Plaintiff's reliance on statements made by Top Audit to establish RSMi's agreement to a principal-agent relationship.

Even if, however, statements by Top Audit were relevant to the existence of a principal-agent relationship between Top Audit and RSMi, the documents cited by Plaintiff would not help its position. The Business Plan allegedly prepared by Top Audit and attached as Exhibit D to Plaintiff's Opposition, for example, expressly states, "The accounting and financial companies which are part of RSM International, are independent legal persons. RSM International does not render accounting and consulting services on its own behalf." Opp'n Ex. D at 2.

These representations are consistent with statements on RSMi's website, from which Plaintiff selectively quotes in its Opposition. The RSMi web page attached as Exhibit B to

7

Plaintiff's Opposition states, "RSM International is a worldwide network of *independent* professional service firms." Opp'n Ex. B at 2 (emphasis added). And Plaintiff neglects to attach the portion of RSMi's web site that explains:

> RSM International is an affiliation of independent accounting and consulting firms. RSM International and its member firms are separate and independent legal entities. RSM International Limited does not practice public accounting or consulting in its own name.

Ex. 1. As these sources make clear, Plaintiff's allegations do not establish that there has been a "manifestation by" RSMi that Top Audit "shall act for" it in performing the auditing work at issue in this case. Opp'n 15 (quotation marks omitted). On the contrary, the documentary evidence of RSMi's representations regarding its relationship with Top Audit suggests nothing of the kind.

Plaintiff's allegations in this regard are strikingly similar to the allegations of agency rejected in *Lernout & Hauspie*. In that case, the plaintiff argued that the defendant, KPMG International, marketed "itself and all of its member firms as a single entity" on its web site. 230 F. Supp. 2d at 170 (quotation marks omitted). The court declined to find a principal-agent relationship between KPMG and its member firms on this basis, noting that KPMG's website also stated "that each of KPMG's member firms is a separate and independent legal entity." *Id.* (internal quotation marks omitted). Here, as in *Lernout & Hauspie*, Plaintiff's reliance on RSMi's website only undermines Plaintiff's assertion of an agency relationship.

## II.   This Court Lacks Personal Jurisdiction over RSMi.

Plaintiff concedes that RSMi's own conduct and activities do not provide a basis for personal jurisdiction—RSMi is a foreign corporation with no offices or activities directed to New York, and is not alleged to have itself conducted any activity having effects in New York. And even with respect to its jurisdiction-via-agency theory, Plaintiff concedes that, under New

8

York law, a defendant is subject to personal jurisdiction based on the acts of an agent only if the agent acted "with the knowledge and consent of the" principal and the principal "exercised some control over" the agent "in the matter." Opp'n 22 (citation omitted). Plaintiff does not allege that RSMi had "knowledge" of Top Audit's allegedly fraudulent activity at the time it occurred, or that RSMi "exercised some control" over Top Audit's conduct "in the matter."

Instead, Plaintiff says that RSMi is subject to personal jurisdiction in New York because it knew that Top Audit "was in fact holding itself out as providing" auditing and accounting services "to public companies based in New York as an authorized agent and representative of RSMi." Opp'n 23. This summary of Plaintiff's allegations is misleading at best—Plaintiff does not allege that RSMi knew that Top Audit ever told a client that Top Audit was an agent of RSMi, *compare* Second Am. Compl. ¶ 40, nor do the statements from Top Audit's web page support an inference of such knowledge, *see* Opp'n 4 & Ex. C. At most, Plaintiff alleges that RSMi knew that Top Audit as a general matter performed auditing work for clients in New York. That allegation, even if true, does not establish either that Top Audit acted "with the knowledge and consent" of RSMi with respect to the alleged fraudulent activity at issue or that RSMi "exercised some control over" Top Audit "in the matter."

In an effort to salvage personal jurisdiction over RSMi from these deficient pleadings, Plaintiff asserts that RSMi "effectively ratified" Top Audit's allegedly fraudulent conduct "by approving the letter" that Top Audit wrote to Plaintiff in response to Plaintiff's complaint to RSMi. Opp'n 23. That is incorrect as a matter of law, even accepting the pleaded facts as true. Even the cases cited by Plaintiff make clear that ratification occurs only when the principal "condones" the agent's acts *and* "accepts the benefits of them." Opp'n 23-24 (*quoting Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*, 336 F.3d 94, 100 (2d Cir.

9

2003)).  This latter element is essential:  "Ratification requires acceptance by the principal of the benefits of an agent's acts . . . ."  *Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd.*, 835 F.2d 32, 36 (2d Cir. 1987).  Plaintiff does not allege that RSMi "accept[ed] the benefits" of Top Audit's alleged conduct—there is no allegation that Top Audit shared with RSMi any profit it might have received from the alleged fraud, for example.  Without this essential element, there can be no ratification of Top Audit's conduct by RSMi.  Moreover, "[a] principal cannot ratify an agent's act that the principal itself could not have authorized."  *Prisco v. State of New York*, No.  91 Civ. 3990 (RLC), 1996 WL 596546, at *18 (S.D.N.Y. 1996) (alteration in original) (internal quotation marks omitted).  As explained above, RSMi did not have the authority to control Top Audit's auditing work, and therefore RSMi cannot ratify any alleged fraudulent activity by Top Audit performed in the course of that work.[2]

## CONCLUSION

For the foregoing reasons, RSMi's motion to dismiss should be granted.

Respectfully submitted,

/s/ Steven M. Farina
David E. Kendall (Bar No. DK 8983)
Steven M. Farina *(admitted pro hac vice)*

---

[2] Plaintiff's halfhearted footnote request for jurisdictional discovery, Opp'n 24 n.29, should be rejected.  Jurisdictional discovery is appropriate where the plaintiff has made a "threshold showing that some basis for personal jurisdiction exists."  *Cicalo v. Harrah's Operating Co.*, No. 06 Civ. 221 (PKL), 2008 WL 1847665, at *5 (S.D.N.Y. Apr. 24, 2008).  As the cases cited by Plaintiff make clear, further jurisdictional discovery is generally warranted where the plaintiff has alleged that the defendant is subject to personal jurisdiction under a fact-specific test, such as the "solicitation plus rule," *id.* at *4 (quotation marks omitted); "continuous and systematic" contacts with the forum, *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 72 (E.D.N.Y. 2006); or "minimum contacts analysis," *Tex. Int'l Magnetics, Inc. v. Aurig-Aurex, Inc. (In re Magnetic Audiotape Antitrust Litig.)*, 334 F.3d 204, 207 (2d Cir. 2003).  (The final case cited by Plaintiff, *Reiss v. Societe Centrale du Groupe des Assurances Nationales*, concerned *subject matter jurisdiction* under the Foreign Sovereign Immunities Act, not personal jurisdiction under New York law.  235 F.3d 738, 746 (2d Cir. 2000)).  In this case, by contrast, Plaintiff's assertion of personal jurisdiction over RSMi is based on allegations that, even if true, would not establish personal jurisdiction as a matter of law.  Plaintiff has thus failed to make a "threshold showing" of personal jurisdiction, and therefore no jurisdictional discovery is warranted.

Thomas H. L. Selby *(admitted pro hac vice)*
Jonathan Kravis *(admitted pro hac vice)*

WILLIAMS & CONNOLLY, LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Counsel for Defendant RSM International Limited*

June 6, 2008

11

## CERTIFICATE OF SERVICE

I, Jonathan Kravis, hereby certify that on this 6th day of June, 2008, I caused a true and correct copy of the foregoing Reply in Support of Motion to Dismiss to be served via the Court's electronic filing system upon:

> Robert Sidorsky
> Martin P. Russo
> Alison B. Cohen
> 380 Madison Avenue
> New York, NY 10017
> *Counsel for Plaintiff*

/s/ Jonathan Kravis_____
Jonathan Kravis

# EXHIBIT 1

Contacts    Become a member    Press    Publications    Member Lo

You are here: Home > Contacts    Search the s



Worldwide offices
Choose a country

**International Executive Office - United Kingdom**

11 Old Jewry
2nd Floor
London
EC2R 8DU

Tel: +44 (0)20 7601 1080
Fax: +44 (0)20 7601 1090

General enquiries - RSM Communications

Chief Executive Officer - Jean Stephens

Director of Strategic & Economic Research - Judit Petho

Technical Manager - Kevin Chowdhay

Technical Manager - Mark Pullen

Technical Manager - Marco Marcellan

Technical Manager - Paul Harrison

Financial Controller - Sharon Namazie

Technology Applications - Rebecca Williams

PR & Communications - Gillian Hawkes

Assistant to the CEO - Ruth Mooney

Adminstration Support - Katy Triggs

London    18:53    New Yo
Hong Kong    01:53    Tokyo
Worldwide time zones

**Did you know?**
Auckland has the largest numbe
capita than any other city in the v

RSM International is an affiliation of independent accounting and consulting firms.
RSM International and its member firms are separate and independent legal entiti
RSM International Limited does not practice public accounting or consulting in its

RSM International Limited
Registered in England & Wales
Registration no: 4040598
Registered office: as above

Site map    Privacy    Terms & conditions    Careers    Print this page    Email this page    Sit